# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:

MICHAEL KEVIN RATHEL,                    Case No. 6:13-bk-07248-ABB
STACIA RACHELLE RATHEL                   Chapter 13

      Debtors.

_____/

JOSEPH and DONNA CHIARO,                 Adv. No. 6:13-ap-00160-ABB
      Plaintiffs

vs.

MICHAEL KEVIN RATHEL
      Defendant.

_____/

## <u>MEMORANDUM OPINION</u>

This matter came before the Court on Joseph and Donna Chiaro's Complaint filed in

Adversary Proceeding 6:13-ap-00160-ABB to determine whether the claim filed by Joseph Chiaro

and Donna Chiaro (collectively the "Plaintiffs") in Defendant's main bankruptcy case (Case No.

6:13-bk-07248-ABB) is nondischargeable pursuant to §§ 523(a)(2)(A) and (B) of the Bankruptcy

Code. Judgment in favor of Plaintiffs is due to be entered.

Defendant filed his voluntary chapter 13 petition with his joint-debtor spouse on June 11,

2013. Defendant listed Plaintiffs in his Schedules as holding an unsecured second mortgage on

Defendant's homestead property located at 1423 Campbell Street, Orlando, FL 32806 (the

"Property") in the amount of $75,000.00.  Plaintiffs filed a claim in the amount of $95,510.95 (the "Claim") secured by a second mortgage in the Property.  Defendant sought to strip off Plaintiffs' second mortgage alleging the value of the Property was $382,000.00 and fully encumbered by a first mortgage in favor of Flagstar Bank in the amount of $410,634.20. Plaintiffs responded by filing the instant adversary proceeding alleging the second mortgage was obtained by Defendant's fraudulent misrepresentations pursuant to §§ 523(a)(2)(A) and (B).

A trial was held on May 28, 2014 at which Defendant, counsel for Defendant, Plaintiff, Plaintiffs' counsel, and the Chapter 13 Trustee appeared.

The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing testimony and argument, and being otherwise fully advised in the premises.

### Findings of Fact

Plaintiffs are the previous owner of the Property.  Plaintiffs were contacted by Debtor after placing a "For Sale by Owner" sign in the Property's yard in January of 2005.  Defendant is an attorney licensed to practice law in Florida since 2000 and owns and operates his own law practice, the Rathel Law Group.  Although Plaintiffs obtained counsel for handling the closing of the Property, the Parties proceeded to negotiate the sale of the Property without help from an informed third party.  The Parties executed an "'As Is' Contract for Sale and Purchase" (the "Contract") for sale of the Property on January 20, 2005 agreeing on a sales price in the amount of $515,000.00 (Plaintiffs' Ex. No. 2).  The Contract provided Defendant would pay the purchase price by cash with "no contingencies for financing" (Plaintiffs' Ex. No. 2).  Closing was set for on or before February 28, 2005 (Plaintiffs' Ex. No. 2).

2

Defendant contacted Plaintiffs shortly after executing the Contract to inform Plaintiffs he would not be able to pay the contract price in cash and could only obtain financing in the maximum amount of $412,000.00 from a lender. Defendant asked Plaintiffs to finance the balance owed on the contract price in the amount of $100,000.00 in exchange for a second mortgage on the Property. Plaintiffs were wary of making such a loan and the Parties discussed the transaction at length.

Defendant made a number of representations during these discussions and reduced these representations into an executed document on February 15, 2005 (the "Statement") (Plaintiffs' Ex. No. 2). The Statement, drafted solely by Defendant, is as follows:

> This agreement is between Joe & Donna Chiaro (seller) and Michael & Stacie Rathel (buyer) regarding the purchase of 1423 Campbell Street located in Orlando, Florida. Buyer agrees that the one hundred thousand dollar loan to buyer from seller regarding the 1423 Campbell property is also a personal debt that cannot be discharged in any way including foreclosure, bankruptcy or insolvency. Buyer agrees that if for some unfortunate event that the loan cannot be repaid under the terms of the loan that buyer agrees to sell their 3705 Eloise Street home located in Orlando, Florida in order to satisfy the one hundred thousand dollar loan plus whatever interest is due. Buyer, also agrees that if the sale of the 3705 Eloise Street home is sold and that amount of the loan plus interest is not satisfied that the remainder will be repaid by Rathel Law Group which has revenues of more than $60,000.00 per month.

The Statement provided Plaintiffs the necessary assurances to make the requested loan to Defendant and, in turn, the representations contained within the Statement were incorporated into the terms of that agreement.

Plaintiffs agreed to finance the remaining purchase price of the Property. Plaintiffs loaned Defendant and his wife $100,000.00 at a 7% annual interest rate payable in monthly installments in the amount of $665.30 commencing March 28, 2005 and continuing until February 28, 2010 at which time the remaining unpaid principal and interest would be fully due and owing in the amount of $94,797.00 (the "Loan") (Plaintiffs' Ex. No. 3). Defendant

executed a second mortgage in favor of Plaintiffs (Plaintiffs' Ex. No. 5) and the Property

was sold to Defendant on March 1, 2005 (Plaintiffs' Ex. No. 4).

The Statement contains three representations:

1. The Loan was not dischargeable in any way including foreclosure, bankruptcy or insolvency;
2. If Defendant failed to pay the Loan, the Loan would be repaid through sale of property the Defendant owned located at 3705 Eloise Street, Orlando, FL (the "Eloise Property");
3. If sale of the Eloise Property cannot satisfy the Loan, the Rathel Law Group would repay any remainder of the Loan.

The representations regarding the nondischargeability of the Loan and the Eloise Property

are relevant to the alleged fraud. The Parties dispute the meaning of these representations.

Defendant testified he did not know the statement about the nondischargeability of the Loan to be

false despite the fact Defendant is an attorney with self-proclaimed bankruptcy experience

(Plaintiffs' Ex. No. 11), but that the statement was intended to express his intent: that he would not

discharge the Loan in bankruptcy, foreclosure, or insolvency. Plaintiffs testified they understood

this representation to mean the Loan was "also a personal debt that cannot be discharged in any

way, including foreclosure, bankruptcy or insolvency." The first representation is a description,

albeit a false description, regarding the dischargeable character of the Loan. The Court finds the

first representation establishes the Defendant falsely represented the Loan was not dischargeable.

Defendant testified the representation regarding the Eloise Property did not prevent

Defendant from selling the Eloise Property or from using the proceeds of the sale for another

purpose other than to repay the Loan because use of the Eloise Property as collateral was contingent

on Defendant's inability to pay the Loan when it came due. Plaintiffs testified they understood this

statement to mean the Defendant would not sell the Eloise Property prior to Defendant satisfying

4

the Loan and that the Eloise Property would be available to serve as collateral when the Loan came due if Defendant was unable to pay the balance at that time. The Court finds the Defendant promised to pay the Loan by selling the Eloise Property and using the proceeds to pay the Loan, if Defendant could not otherwise pay the Loan when the Loan came due.

Defendant sold the Eloise Property on September 15, 2006 in the amount of $342,000.00 and received upwards of $120,000.00 in proceeds from the sale of the Eloise Property (Plaintiffs' Ex. No. 9). Defendant testified he invested the proceeds into Washington Mutual Bank to earn interest until the loan came due, but the proceeds were lost completely when Washington Mutual Bank failed in 2008 and the majority of its assets were sold to JP Morgan Chase Bank. No corroborating evidence was presented regarding the alleged investment and subsequent loss of the proceeds by Washington Mutual Bank.

Defendant did not make the balloon payment when it came due on February 28, 2010 and requested a one year extension of the Loan. Plaintiffs granted the request and Defendant executed an extension which increased the interest rate to 9.94% and the monthly payments to $775.71 representing interest only payments (Plaintiffs' Ex. No. 8) (the "First Extension"). Plaintiffs testified Defendant verbally reaffirmed the representations made in the Statement were still true and trusted Defendant as he was an attorney. Defendant denied he made such reaffirmations, but admitted he did not disclose he had sold the Eloise Property or invested and lost the entirety of the proceeds. The Court finds the testimony of the Plaintiffs credible. The First Extension, reduced to writing, was made with the understanding all terms of the Statement and Loan were still in effect.

5

Defendant was unable to make the First Extension's balloon payment again on February 28, 2011and requested another extension which Plaintiffs granted with the understanding all terms of the Statement and Loan were still in effect. This pattern continued for a third time at which point Defendant had filed for bankruptcy relief. Only documented evidence of the First Extension was offered into evidence and is the focus of the Court's analysis pursuant to §§523(a)(2)(A) and (B).

It was not until Defendant's bankruptcy filing that Plaintiffs were informed the Loan could be discharged in bankruptcy, the Eloise Property had been sold and its proceeds were unaccounted for, and the Rathel Law Group was not earning $60,000.00 in monthly revenues. These false statements were made to induce Plaintiffs to make the initial Loan and the First Extension. Plaintiffs relied on the representations in making the initial Loan and First Extension to their detriment and such reliance was justified.

## Conclusions of Law

The Parties agree the representations contained within the Statement were made prior to the initial Loan and reduced to writing as evidenced by the Statement. The Parties dispute whether these representations or the Statement constitutes fraud in making the initial Loan or its subsequent extensions pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B).

The Statement establishes the oral representations relied upon by Plaintiffs when they made the Loan and the Fist Extension to Defendant. The Statement and the oral representations therein were included in the Parties loan agreement. "[E]vidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract. This rule applies when the parties intend that a written contract incorporate their final and complete

agreement." *Johnson Enters. of Jacksonville v. FPL Group,* 162 F.3d 1290, 1309 (11th Cir.1998).

Florida courts recognize an exception to this rule where "a contemporaneous oral agreement

induced the execution of a written contract, though it may vary, change, or reform the instrument."

*See Mallard v. Ewing,* 121 Fla. 654, 664, 164 So. 674, 678 (1935).

The inducement exception " 'requires the [oral] agreement to be shown by evidence that is

*clear, precise, and indubitable; that* it shall be found that the witnesses are credible, that they

distinctly remember the facts to which they testify, and that they narrate the details exactly and that

their statements are true.' " *Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000) (citing

*Johnson Enters. of Jacksonville v. FPL Group,* 162 F.3d 1290, 1309-10 (11th Cir.1998)). Parol

evidence is admissible when consistent with, and not contrary to, such written instrument. *Id.* at

1282 (citing *Bond v. Hewitt,* 111 Fla. 180, 185, 149 So. 606, 608 (1933)).

The Parties agree the oral representations comprising the Statement were made by

Defendant to provide assurances to induce Plaintiffs to make the Loan. These representations and

the Statement are not contrary or otherwise inconsistent with the terms of the Loan or any other

documents executed relative to the Loan including the Contract, note and mortgage. The oral

representations as memorialized by the Statement are, therefore, incorporated in the initial Loan and

the First Extension.

### *Count I*

The Bankruptcy Code prohibits debtors from discharging liabilities incurred on account of

their fraud, embodying a basic policy of affording bankruptcy relief only to the "honest but

unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 655, 112 L. Ed. 2d 755

(1991). Section 523(a)(2)(A) of the Bankruptcy Code illustrates this principle by excepting from

discharge "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud." *Cohen v. de la Cruz*, 523 U.S. 213, 217-18, 118 S. Ct. 1212, 1216, 140 L. Ed. 2d 341 (1998).

Courts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud. *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998). A plaintiff must establish the following to prevail on a claim of nondischargeability pursuant to §523(a)(2)(A):

1. the debtor made a false representation with the purpose and intention of deceiving the plaintiff;
2. the plaintiff relied on such representation;
3. the reliance was reasonably founded; and
4. the plaintiff sustained a loss as a result of the representation.

*In re Jones*, 176 B.R. 629, 634-35 (Bankr. M.D. Fla. 1995); *In re Hunter*, 780 F.2d 1577 (11th Cir.1986); *In re Graham*, 122 B.R. 447 (Bankr. M.D. Fla.1990)). The burden is upon a plaintiff to prove all of the elements of fraud under this section. *In re Miller*, 39 F.3d 301, 304 (11th Cir.1994). A plaintiff must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 291.

The concept of false pretenses is broad under §523(a)(2)(A) including any intentional fraud or deceit practiced by any method in any manner. "False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol, or token calculated and intended to deceive....Silence or concealment as to a material fact can constitute false pretenses." *In re Wood*, 245 F. App'x 916, 918 (11th Cir. 2007) (citing *In re Gilmore*, 221 B.R. 864, 872 (Bankr. N.D. Ala.1998) (internal citations and quotations omitted)). A determination of fraudulent intent is an issue of fact determined by a review of the

totality of the circumstances and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." *In re Miller*, 39 F.3d at 305.

A Plaintiff's reliance upon a debtor's false representation must be justified. *Field v. Mans*, 516 U.S. 59, 73-75 (1995). Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *Id.*

A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. *Lightner v. Lohn,* 274 B.R. 545, 550 (M.D. Fla. 2002).

Defendant's representation regarding the Eloise Property and continued affirmation of this representation or later silence as to the falseness of the representation constitutes false pretenses within the context of section 523(a)(2)(A) because the representation contained within the Statement had been incorporated into the Loan documents and Defendant knew the Eloise Property had been sold and the proceeds lost years before the Loan had come due in order to induce Plaintiffs to extend the due date of the Loan an additional year. Defendant, as an attorney and sole drafter of the Statement, should have appreciated his representation regarding the nondischargeability of the Loan in bankruptcy or foreclosure was not based in fact and constitutes false pretenses under section 523(a)(2)(A) where Defendant failed to disclose the falseness of the representation in obtaining the First Extension.

Although Defendant was free to alienate the Eloise Property under the Statement, when requesting to renew the note in February of 2010 and agreeing to the renewal terms, including the Statement and the oral representations memorialized therein, Defendant was under a duty to disclose the sale of the Eloise Property in 2006 as well as the alleged subsequent loss of its proceeds

9

in 2008. *See In re Brandon*, 297 B.R. 308 (Bankr. S.D. Ga. 2002) (finding a debt nondischargeable where the debtor had pledged assets as collateral on a line of credit, the debtor subsequently sold the assets, then the debtor obtained a renewal of the credit without disclosing sale of the assets to the creditor). Defendant was under the same duty to correct the inaccuracy of the Statement regarding the dischargeability of the Loan.

Defendant's silence created the false impression the Eloise Property or its proceeds remained viable collateral for the Loan and the Loan remained nondischargeable in bankruptcy and foreclosure. This false impression was intended to induce an extension of the Loan when Defendant knew the Eloise Property had been sold and the proceeds from its sale had been lost years prior to negotiating the First Extension. Defendant failed to correct his inaccurate statement regarding the nondischargeability of the Loan in bankruptcy or foreclosure.

Plaintiffs testified they never would have made the Loan but for the Defendant's stated assurances made orally and contained within the Statement regarding the availability of the Eloise Property as collateral or the nondischargeability of the Loan. Plaintiffs testified they trusted the truthfulness of Defendant's statements especially given Defendant's profession as a lawyer. The Court agrees. Plaintiffs would not have made the Loan without the promise the Loan could not be discharged or of additional collateral in the Eloise Property. Plaintiffs were under no duty to conduct an investigation into the ownership of the Eloise Property where there was no reason for them to be aware of a potential falsity. *Ojeda v. Goldberg*, 599 F.3d 712, 718 (7th Cir. 2010) (citing *Field v. Mans,* 516 U.S. at 70-71). Defendant's failure to repay the fraudulently obtained Loan has resulted in a loss to Plaintiff as they have yet to collect $95,510.95 of the $100,000.00

Loan. Plaintiffs' relied on Defendant's false pretenses to their detriment and such reliance was justified.

Defendant's representations made orally and in writing regarding the nondischargeability of the Loan and the Eloise Property are included in the terms of the Note and Mortgage. These representations were false. Defendant's failure to disclose the Sale of the Eloise Property, the loss of the proceeds from Sale of the Eloise Property, and the inaccuracy of the representation regarding the dischargeability of the Loan induced the First Extension from Plaintiffs with the intent to deceive them. Plaintiffs relied on these misrepresentations in granting the First Extension and were justified in their reliance. Plaintiffs have suffered damages as a result of granting the extension caused by Defendant's fraud. The Loan is due to be found nondischargeable pursuant to Section 523(a)(2)(A).

### Count II

Section 523(a)(2)(B) excepts a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by:

(B) use of a statement in writing—

    (i)     that is materially false;

    (ii)    respecting the debtor's or an insider's financial condition;

    (iii)   on which the Plaintiff to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv)   that the debtor caused to be made or published with intent to deceive.

Having found the Loan nondischargeable pursuant to Section 523(a)(2)(A), the Court need not analyze the Loan's nondischargeability pursuant to Section 523(a)(2)(B).

*Conclusion*

Plaintiffs have established the indebtedness owed to them by Defendant was incurred by Defendant through fraud.  The indebtedness owed by Defendant to Plaintiffs is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Accordingly it is,

**ORDERED, ADJUDGED and DECREED** that the Plaintiffs' claim is hereby **NONDISCHARGEABLE** in the amount of $95,551.95

Dated this ___ day of August, 2014.

_____
ARTHUR B. BRISKMAN
United States Bankruptcy Judge